# Wytheville

## HARRY E. BRUCE v. ROSA BRUCE ELLIOTT, ET AL.

June 10, 1937.

Present, All the Justices.

The opinion states the case.

*James H. Corbitt* and *S. M. Brandt*, for the plaintiff in error.

*James G. Martin & Son* and *Crumpler & Crumpler*, for the defendants in error.

Eggleston, J., delivered the opinion of the court.

Fannie T. Bruce, a widow, died on December 10, 1933, at the age of seventy-six, in the Eastern State Hospital at Williamsburg, to which she had been committed in the previous month. She left as her nearest relatives a son, Harry E. Bruce, a daughter, Rosa Bruce Elliott, and a foster son, her nephew, Robert Bruce Brothers.

Shortly after Mrs. Bruce's death there was probated in the clerk's office of the court below a will dated January 12, 1929, and purporting to have been written wholly in her own handwriting. It read as follows:

"I, Fannie T. Bruce, do make the following as and for my last will, hereby revoking all other wills heretofore made by me.

"*First:* I give my son Harrie E. Bruce my property known as 850 and 852 Washington Street, in the City Suffolk Virginia.

"*Second* all the rest and residue of my Estate I give to my son, Harrie E. Bruce, my Daughter, Rosa Bruce Elliott and Robert Bruce Brothers, to be equally divided between them.

"*Third* I hereby appoint my son Harrie E. Bruce Executor of my Estate and request that he be allowed to act without giving bond or other security.

"4. If Robert should die without an heir, the portion I leave to him shall be equally divided between Harrie E. Bruce & Rosa Bruce Elliot.

"Written by me wholly by me in my own handwriting and signed by me this 12th day of January, 1929.

"Fannie T. Bruce."

Under the terms of this will the major portion of the estate, valued at some thirty-odd thousand dollars, went to Harry E. Bruce.

Rosa Bruce Elliott instituted this proceeding for the purpose of contesting the will on the ground that it was a forgery, and that the testatrix lacked sufficient mental capacity on the date of the execution of the alleged instrument to make a will. An issue *devisavit vel non* was submitted to a jury which, after a trial consuming eleven days, brought in the following verdict: "We the jury upon the issue joined, find that the paper writing dated January 12, 1929, is not the true last will and testament of Fannie T. Bruce, deceased."

The trial court refused to disturb the verdict and entered judgment thereon, to review which this writ has been granted.

The principal assignment of error is that there is insuf-

ficient evidence to support either contention of the contestant, namely, that the purported will was a forgery, or that Mrs. Bruce lacked the necessary mental capacity to make a will. If the evidence on behalf of the contestant be sufficient to support the verdict of the jury on either of these issues, then, of course, this assignment is without merit.

We will first consider whether there be sufficient evidence to support the finding of the jury as to the lack of mental capacity.

On this issue the evidence is quite voluminous and highly conflicting. More than thirty witnesses testified for the contestant, while nearly twenty testified on behalf of the proponents. It would serve no good purpose to undertake to review here in detail the mass of evidence. In the light of the jury's verdict the following facts must be taken as proven:

On November 3, 1933, a commission was held on Mrs. Bruce. She was found to be suffering from *senile dementia* and was committed to the Eastern State Hospital, where she died shortly thereafter on December 10.

Mrs. Bruce's husband died in 1914. There is testimony that at that early date her mental condition was not normal, that it did not improve but grew worse, as the years passed, until her collapse in 1933.

Numerous witnesses testified to these characteristics at or about the time the will is supposed to have been written: That she was eccentric, frequently wore two dresses or two hats at the same time; that she was often mentally confused and even childish; that on many occasions she became lost on the streets of Suffolk, where she had lived for many years, and had to be escorted home; that she frequently inquired about her parents who had been dead for many years, and about other friends who had long since passed away.

At times she did not know her brother and intimate friends when meeting them on the street. Her conversation was often disjointed and incoherent, and frequently she carried on long conversations with herself in public places. Sometimes she ascended stairs backwards.

In 1927, when Mrs. Bruce was approximately seventy years

old, she made plans to marry a young Italian tailor about forty years younger than she. Her trousseau had been purchased and the marriage license obtained. The members of Mrs. Bruce's family knew nothing of these plans until the day set for the proposed marriage, and, in fact, until she was about to catch a bus to go to Norfolk where the ceremony was to be performed. She was then intercepted on the street by her son, Harry E. Bruce, who took her home. Without the slightest protest she abandoned all idea of getting married and apparently the matter then passed completely out of her mind. In a short while she had even forgotten the name of the man she had planned to marry.

Other instances equally distressing, which go to prove her lack of normal mental capacity, are found in the record but need not be here detailed.

Seven of the witnesses who testified for the contestant as to Mrs. Bruce's lack of mental capacity were members of her family, including a brother, a nephew, and three cousins, none of whom had any pecuniary interest in the subject matter of the controversy. Other disinterested witnesses included life-long friends of Mrs. Bruce, merchants with whom she traded, bankers, insurance representatives, a newspaper correspondent, and others of high intelligence. The great majority of these were local people who must have been well known to the members of the jury.

At least seven witnesses testified that her mental condition in 1929, at the time the alleged will was written, was not normal. They variously described her condition at that time as being "irresponsible," not "mentally sound," "like a child ten or twelve years old;" that she did not have "her right mind;" that she was not "mentally capable of attending to business." Her own brother testified that in 1929 her mentality "was bad," and that she had not been talking normally for four or five years prior to her death.

Dr. Richard Joyner, a physician who had been practicing in Suffolk for fourteen years, was a member of the commission which adjudicated Mrs. Bruce to be insane. His testimony is that she was suffering from *senile dementia*, and that this is a

chronic progressive disease usually of ten or twelve years standing.

Dr. Frank Redwood, a specialist on mental diseases, likewise testified that *senile dementia* is a chronic progressive disease, and that if Mrs. Bruce was suffering therefrom on November 3, 1933, she was probably afflicted therewith from eight to ten years prior thereto.

The purport of the testimony on behalf of the proponents of the will is that while Mrs. Bruce was perhaps eccentric in her manner, dressed queerly, and acted peculiarly at times, yet she was entirely mentally capable of making a will; that she was an intelligent and even astute business woman, and had successfully managed the large estate which her husband left her.

Dr. Beverly R. Tucker, an expert on mental diseases, testified in reply to a hypothetical question that Mrs. Bruce was, in his opinion, mentally competent at the time of the execution of the supposed will.

■ We have given careful consideration to this, as well as to all of the documentary evidence supporting the contention of the proponents. But, as this court has many times said, the question of mental capacity, on conflicting evidence, is one for the jury, and where the issue has been fairly submitted on proper instructions neither the trial court nor this court may disturb the verdict. See *Redford* v. *Booker,* 166 Va. 561, 572, 573, 185 S. E. 879; *Smith* v. *Ottley,* 144 Va. 406, 410, 411, 132 S. E. 512, and cases there cited. Both of the decisions just referred to deal with the characteristics of *senile dementia* in circumstances similar to those in the present case.

■ We are convinced that the evidence on behalf of the contestant was sufficient to support the finding of the jury that Mrs. Bruce lacked the necessary mental capacity to have made the supposed will.

The conclusion which we have reached on this phase of the case makes it unnecessary that we consider in detail whether the evidence on behalf of the contestant is sufficient to support the finding of the jury that the supposed will was a forgery. It may be said in passing, however, that if the

mental capacity of Mrs. Bruce was such as is detailed by the witnesses for the contestant, and confirmed by the verdict of the jury, it is inconceivable that she could have framed and written in her own handwriting the instrument set out above and alleged to have been her will. Doubtless the jury was of the same opinion.

In this connection it is most significant to note that Harry E. Bruce, the principal proponent, although present in court, failed to testify either as to his mother's mental condition, with which he is bound to have been familiar, or to refute the implication directed at him that the will was a forgery. No doubt the jury drew from the failure of this witness to take the stand the inference that his testimony on these matters, so vital to his case, would have been adverse to his interests. See *Smith* v. *Ottley*, *supra*.

The next assignment of error is to the action of the court in permitting counsel for the contestant, Mrs. Elliott, to say in his opening statement to the jury that Mrs. Elliott had arranged a compromise settlement with Robert Bruce Brothers, the third beneficiary under the will, whereby the latter had been eliminated as an active claimant in the suit.

But even assuming that this statement was improper, there was no objection or exception thereto and hence it can not be questioned here. Rule XXII.

The remaining assignments of error deal with the granting and refusing of instructions. Some of the objections here advanced were not raised in the court below, and, of course, can not be put forward here. Rule XXII.

We have carefully reviewed all of the instructions granted and refused and feel that the jury was fully and fairly instructed on the issues presented.

The view which we have taken of the matter makes it unnecessary that we consider or pass upon the motion to dismiss the writ of error.

In our opinion the judgment of the trial court is plainly right and it is accordingly

*Affirmed.*